UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JACKSON NATIONAL LIFE INSURANCE COMPANY, | |
|---|---|
| *Plaintiff*, | No. 3:18cv934 (MPS) |
| v. | |
| ELIZABETH N. ROOSEN, LISA DAWN JOHNSTONE (f/k/a LISA DAWN SHINNERS), and DOROTHY B. JOHNSON (f/k/a DOROTHY B. SHINNERS), | |
| *Defendants*. | |

**RULING ON MOTION FOR ENTRY OF STIPULATED JUDGMENT [ECF NO. 27] AND MOTIONS FOR DEFAULT JUDGMENT [ECF NOS. 28 & 30]**

This case arises out of a dispute regarding the rightful beneficiary of life insurance proceeds held, at the time the complaint was filed, by Jackson National Life Insurance Company ("Jackson National"). Jackson National filed a Complaint in Interpleader against three potential beneficiaries: Elizabeth Roosen ("Roosen"), Lisa Johnstone ("Johnstone"), and Dorothy Johnson ("Johnson"). ECF No. 1. Johnson failed to appear to defend against the Complaint in Interpleader. Roosen and Johnstone filed an Answer to the Complaint in Interpleader and a Cross Complaint against Jackson National and Johnson. ECF No. 16. Jackson National, Roosen, and Johnstone successfully moved for entry of default against Johnson under Federal Rule of Civil Procedure 55(a). ECF Nos. 20 & 22. Jackson National has now filed a Motion for Default Judgment against Johnson under Federal Rule of Civil Procedure 55(b)(2). ECF No. 28. Roosen and Johnstone have filed a separate Motion for Default Judgment against Johnson under the same rule. ECF No. 30. Finally, Jackson National, Roosen, and Johnstone together filed a Motion for Entry of Stipulated Judgment. ECF No. 27.

1

For the reasons discussed below, the Court hereby enters the following orders. Jackson National's Motion for Default Judgment, ECF No. 28, is GRANTED IN PART and DENIED IN PART. The order of default with respect to Johnstone and Roosen against Johnson, ECF No. 22, is VACATED. Roosen's and Johnstone's Motion for Default Judgment, ECF No. 30, is DENIED WITHOUT PREJDUICE. The Joint Motion for Entry of Stipulated Judgment, ECF No. 27, is DENIED WITHOUT PREJUDICE.

I. **Factual Background**

The following facts are taken from the Complaint in Interpleader, ECF No. 1, and the Cross Complaint, ECF No. 16.

On July 11, 1998, Valley Forge Life Insurance Company issued a life insurance policy that provided for the payment of a $100,000 death benefit, plus interest, upon the death of Jerome Shinners ("Shinners"). ECF No. 1 at ¶ 2; ECF No. 28-1 at 2. This policy is now held by Jackson National. ECF No. 1 at ¶ 2. Jackson National is a corporation organized under the laws of the State of Michigan and maintains its principal place of business in Lansing, Michigan. *Id*. at ¶ 4. Roosen is Shinners's friend and maintains a primary residence in Avon, Connecticut. *Id*. at ¶¶ 5, 13. Johnstone is Shinners's daughter and maintains a primary residence in San Diego, California. *Id*. at ¶¶ 6, 12. Johnson is Shinners's ex-wife and maintains a primary residence in West Palm Beach, Florida. *Id*. at ¶¶ 7, 13.

In his application for the policy, Shinners designated Johnson as the irrevocable beneficiary and Johnstone as the contingent beneficiary. *Id*. at ¶ 12. Shinners and Johnson were later divorced and a Judgment of Divorce and Agreement ("Divorce Judgment") was entered on September 20, 2000. *Id*. at ¶ 17. The Divorce Judgment stated, in part, that Shinners would pay

2

alimony to Johnson for eight years and would continue to name her as the irrevocable beneficiary of the insurance policy for the same term:

1. The Plaintiff shall pay alimony to the Defendant in the amount of $300.00 per week for a period of 8 years from the date of dissolution. Said alimony shall be non-modifiable as to term, but shall terminate sooner upon the death of either party or the Defendant's remarriage . . . .
2. The Plaintiff shall maintain a $100,000.00 life insurance policy on his life, naming the Defendant as the irrevocable beneficiary of same, for as long as he has an obligation to pay alimony to the Defendant.

*Id*. at ¶ 18. On November 5, 2001, Shinners executed a Change of Beneficiary Form in which he designated Johnson as a Primary Beneficiary eligible to receive 50% of the death benefit, and Roosen as a Primary Beneficiary eligible to receive 50% of the death benefit. *Id*. at ¶ 13. Johnson did not execute the form. *Id*. On September 5, 2008, Shinners executed another Request for Change of Beneficiary Form and designated Roosen and Johnstone as co-equal Primary Beneficiaries, each to receive 50% of the death benefit. *Id*. at ¶ 14; ECF No. 16 at 2-3 ¶ 1. Johnson again did not execute the form. ECF No. 1 at ¶ 14.

Shinners died on December 18, 2017 in Avon, Connecticut. *Id*. at ¶ 1. Following his death, the death benefit became payable to the proper beneficiaries. *Id*. at ¶ 15. On January 28, 2018, Roosen executed a Life Claimant Statement, seeking payment of the benefit. *Id*. at ¶ 16. Roosen and Johnstone each claim entitlement to 50% of the death benefit on the basis that each was properly named as a beneficiary in the Change of Beneficiary Form submitted on September 5, 2018. ECF No. 16 at 2-3 ¶ 1. They further claim that the divorce agreement obligated Shinners to designate Johnson the irrevocable beneficiary only for as long as his obligation to pay alimony remained and this obligation terminated in 2008. ECF No. 1 at ¶ 19. Johnson claims entitlement to 100% of the death benefit on the basis that she was designated the irrevocable beneficiary under the policy. *Id*. at ¶ 20.

## II. Procedural History

On June 5, 2018, Jackson National filed a Complaint in Interpleader seeking an order (1) granting interpleader relief; (2) compelling Johnson, Roosen, and Johnstone to settle or litigate their respective entitlement to the death benefit; (3) declaring the lawful and proper beneficiaries of the death benefit; (4) awarding Jackson National attorneys' fees and costs and permitting Jackson National to pay the resulting net death benefit to the Registry of the Court[1]; (5) absolving Jackson National of any further liability to any claimant of the death benefit and dismissing Jackson National from the suit upon its payment of the death benefit to the Registry of the Court; (6) restraining the parties to this action from instituting or prosecuting any other suit against Jackson National seeking the death benefit or asserting claims under the policy; and (7) providing any other relief the Court deems equitable and just. ECF No. 1 at 6-7. On the same date, Jackson National filed a motion to deposit the death benefit proceeds with the Court. ECF No. 3. On June 8, 2018, the Court granted this motion and directed the Clerk of the Court to deposit the proceeds in an interest-bearing account. ECF No. 8. On June 22, 2018, the Court issued a notice indicating that it received a deposit in the amount of $100,561.42.[2] ECF No. 9.

Jackson National filed waiver of service forms as to Johnson, Roosen, and Johnstone on June 5, 2018, June 19, 2018, and June 25, 2018, respectively.[3] ECF Nos. 12, 17, 18. Johnson did

---

[1] Jackson National later abandoned its request for attorneys' fees and costs. ECF No. 28-1 at 5.
[2] As noted above, the policy required payment of death benefit proceeds totaling $100,000 plus interest. ECF No. 28-1 at 2.
[3] Johnson's waiver of service form is missing her signature. ECF No. 12. The form includes the following handwritten note from Johnson:
> Jackson Insurance sent me a notice, saying I was a claimant. At divorce, Jerry owed me money so I agreed to let him pay me when he received a paycheck. He did take out this insurance policy in case. He should have paid me by 2008 but he didn't totally pay the debt.

*Id.* She also wrote her name, address, email address, and phone number on the form. *Id.* In an affidavit to the Court, Peter Zarella, an attorney representing Jackson National, stated that he

4

not appear or file an answer. On July 12, 2018, Roosen and Johnstone filed an Answer and Cross Complaint, asserting that Johnson has no legal or equitable claim to the death benefit and seeking payment of the death benefit plus all interest. ECF No. 16 at 3. In contravention of Federal Rule of Civil Procedure 5, Roosen and Johnstone did not serve this pleading on Johnson – or at least they have failed to file proof of service on the docket. Fed. R. Civ. P. 5(a)(1)(B) (requiring service of "a pleading filed after the original complaint"); *id.* at 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.").[4] As such, Roosen and Johnstone shall serve this order, together with their Answer and Cross Complaint, on Johnson in accordance with the Court's directions below.

On August 28, 2018, Jackson National filed a motion for default entry under Rule 55(a) against Johnson. ECF No. 19. On September 11, 2018, Roosen and Johnstone filed a motion for default entry under Rule 55(a) against Johnson. ECF No. 21. The Clerk of the Court entered a

---

emailed Johnson at the email address she provided on the waiver of service form to notify her that she or her attorney must file an appearance with the court and answer the complaint. ECF No. 19-1 at ¶ 4. Although Johnson did not sign the waiver of service form, she wrote her name, address, email address, phone number, and a note on the form, indicating her awareness of the lawsuit and the issues involved. ECF No. 12. As such, there is proof of actual notice, and the defect is harmless. *See St. John Rennalls v. County of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994) ("Deficiencies in the method of service are harmless error under Fed.R.Civ.P. 61 when the party asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency."); *Anderson v. Lalley*, 2015 WL 6686586, at *4 (W.D.N.Y. Oct. 29, 2015) (noting that "courts in this Circuit . . . have found that [w]here a party contesting service of process has received actual notice, service requirements . . . are construed liberally.") (internal quotation marks and citation omitted); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.") (internal quotation marks omitted).

[4] Although the certification page of the Answer and Cross Complaint includes the notation "Certified Mail/Return Receipt" above Johnson's name, ECF No. 16 at 4, that is not adequate proof of service under Rule 4(l), and Johnstone and Roosen have not shown that service of a complaint by mail would be proper under Rule 4 in any event.

5

default against Johnson as to Jackson National on September 10, 2018, ECF No. 20, and as to Roosen and Johnstone on September 17, 2018, ECF No. 22. This order vacates the latter order of default due to lack of evidence of service of the Cross Complaint on Johnson.

On October 5, 2018, Jackson National, Roosen, and Johnstone filed a Joint Motion for Entry of Stipulated Judgment seeking an order (1) providing interpleader relief in favor of Jackson National; (2) discharging and absolving Jackson National from further liability to Johnson, Roosen, Johnstone, and any other claimant in connection with the death benefit; (3) discharging and absolving Jackson National, its employees, agents, representatives, predecessors, successors-in-interest, parents, subsidiaries, and assigns, from all liability to Johnson, Roosen, and Johnstone, and from any claims arising under the policy; (4) entering judgment on the Cross Complaint in favor of Roosen and Johnstone; (5) restraining Johnson from instituting or prosecuting any other suit against Jackson National, Roosen, or Johnstone seeking the death benefit; (6) restraining Roosen from instituting or prosecuting any other suit against Jackson National, Johnstone, or Johnson seeking the death benefit; (7) restraining Johnstone from instituting or prosecuting any other suit against Jackson National, Roosen, or Johnson seeking the death benefit; (8) distributing 50% of the funds deposited with the Court to Roosen and 50% of the funds to Johnstone; and (9) dismissing all parties with prejudice and without costs and with each party bearing its own attorney fees. ECF No. 27-1 at 1-3. On the same day, Jackson National filed a Motion for Default Judgment against Johnson, seeking the relief requested in the Complaint in Interpleader. ECF No. 28. On October 10, 2018, Roosen and Johnstone filed a Motion for Default Judgment against Johnson, seeking the relief requested in their Cross Complaint. ECF No. 30.

### III. Legal Standard

#### A. Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, a party must obtain a default under Rule 55(a). *Id.* "When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended." *Id.* Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b). *Id.* If the plaintiff's claim is for a sum certain, Rule 55(b)(1) allows the clerk to enter default judgment in the plaintiff's favor. In all other cases, the plaintiff must apply to the court for default judgment under Rule 55(b)(2).

Once default has been entered against a defendant, "all well-pleaded allegations in the complaint pertaining to liability are deemed true." *Scottsdale Ins. Co. v. LCB Const. LLC*, 2012 WL 1038829, at *3 (E.D.N.Y. Feb. 14, 2012), report and recommendation adopted, 2012 WL 1041455 (E.D.N.Y. Mar. 28, 2012). Although a default constitutes an admission of the allegations in the complaint, "it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action." *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000). At the second step, it therefore "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Leider v. Ralfe*, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (internal quotation marks and citation omitted); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of

7

a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."). The court must "draw all reasonable inferences in [the non-defaulting party's] favor." *Finkel v. Romanowicz*, 557 F.3d 79, 84 (2d Cir. 2009).

Once a court determines that a plaintiff is entitled to default judgment as a matter of law, it must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnaise Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Id.* "A district court has the discretion to determine the amount of damages to be included in a default judgment by an evidentiary hearing, detailed affidavits, or documentary evidence." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 191 (2d Cir. 2006). It is not necessary to hold a hearing on damages as long a court "ensure[s] that there [is] a basis for the damages specified." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

In an interpleader action, both plaintiffs and defendants are permitted to move for entry of default judgment. *Hawkins v. Boyd*, 2016 WL 7626577, at *3 (E.D.N.Y. Nov. 18, 2016), *report and recommendation adopted*, 2017 WL 27949 (E.D.N.Y. Jan. 3, 2017) ("While more frequently it is the plaintiff who moves for entry of default judgment, the right of a defendant in an interpleader action to do so is recognized."); *European Am. Bank v. Royal Aloha Vacation Club*, 1988 WL 68194, at *2 (S.D.N.Y. June 20, 1988) (granting interpleader defendants' motion for default judgment against defendants who failed to appear).

### B. Summary Judgment

A party moving for summary judgment bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When no party moves for summary judgment, but the Court finds that summary judgment may be warranted as to undisputed issues, Rule 56(f) controls and provides "express procedures governing the grant of summary judgment independent of a motion. *Swatch Group Mgt. Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 80 n.2 (2d Cir. 2014). Rule 56(f) states that:

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
>
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f). The Second Circuit has emphasized that this rule permits a court to "grant summary judgment *sua sponte* only after giving notice and a reasonable time to respond and after identifying for the parties material facts that may not be genuinely in dispute." *In re 650 Fifth Ave. and Related Properties*, 830 F.3d 66, 96 (2d Cir. 2016) (internal quotation marks and alterations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").

## IV. Discussion

Jackson National filed this interpleader action under 28 U.S.C. § 1335. ECF No. 1 ¶ 9. "Normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the

9

second adjudicating the adverse claims of the defendant claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at one time." *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983).

### A. Jackson National

The first stage of an interpleader action under Section 1335 has three requirements: 1) the plaintiff must have issued an insurance policy of $500 or more; 2) there must be two or more adverse claimants, of diverse citizenship, who claim or may claim the benefits arising from the policy; and 3) the plaintiff must deposit the amount due under the policy with the court registry. 28 U.S.C. § 1335; *see also New York Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 716 (E.D.N.Y. 2012). As to Johnson, who has defaulted, all well-pleaded allegations in Jackson National's complaint are deemed true and successfully establish these requirements. First, the complaint alleges that the insurance policy provided for the payment of a $100,000 death benefit and is therefore well above the $500 threshold. ECF No. 1 at ¶ 2. Second, Roosen, Johnstone, and Johnson are adverse claimants as Roosen and Johnstone each claim 50% of the benefit while Johnson claims 100%. ECF No. 1 at ¶¶ 19, 20. They are also diverse as Roosen is a citizen of Connecticut, Johnstone is a citizen of California, and Johnson is a citizen of Florida. ECF No. 1 at ¶¶ 5-7. Third, Jackson National deposited the value of the death benefit with the Court. ECF No. 3 (Motion to Deposit funds with the Court); ECF No. 8 (Order granting motion to deposit funds with the Court); ECF No. 9 (Interpleader Deposit Received in the amount of $100,561.42). As such, Jackson National has met the requirements for the first stage of interpleader relief as to Johnson.

As to Johnstone and Roosen, it appears the Court should grant summary judgment under Federal Rule of Civil Procedure 56(f) on the basis that no reasonable finder of fact could find

10

that the requirements for the first stage of interpleader have not been met. The Court notes that Johnstone and Roosen admitted the first requirement for interpleader relief in their Answer. ECF No. 16 at ¶ 2 (admitting that the death benefit exceeds $500). As to the second requirement, Johnstone and Roosen admit that they each claim 50% of the death benefit, ECF No. 16 at ¶ 19, and that they are citizens of California and Connecticut, respectively, *id*. at ¶¶ 5-6. Although they state that they are "without sufficient knowledge" to admit whether Johnson is a citizen of Florida, *id*. at ¶ 7, the Court notes that Johnson lists an address in Florida on the waiver of service form she completed, ECF No. 12.[5] And although Johnstone and Roosen state that they are "without sufficient knowledge" to admit whether Johnson claims entitlement to the death benefit, ECF No. 16 at ¶ 20, the Court notes that Johnson wrote that Shinners "should have paid me by 2008 but he didn't totally pay the debt" on the waiver of service form, ECF No. 12. In any event, Johnstone and Roosen do not deny Jackson National's allegations on these points, and the only relevant evidence in the record indicates that they are true. Finally, as to the third requirement, the Court notes that Jackson National deposited the value of the death benefit with the Court. ECF No. 9. As such, there appears to be no genuine dispute of material fact as to any of the three requirements, and summary judgment to Jackson National as to the first stage of an interpleader action vis-à-vis Johnstone and Roosen appears to be warranted.

However, because Rule 56(f) requires notice, a reasonable time to respond, and identification of the material facts that may not be genuinely in dispute, **Johnstone and Roosen may show cause, by filing a memorandum of law and any evidentiary materials in support**

---

[5] In any event, only "minimal diversity," that is diversity between any two claimants, is required under 28 U.S.C. § 1335. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).

**thereof, why Jackson National should not be granted summary judgment as to the first stage of interpleader relief by no later than May 17, 2019.**

Because Jackson National has established the requirements of the first stage of an interpleader action vis-à-vis Johnson, and appears to have established them vis-à-vis Johnstone and Roosen, it shall be discharged from liability in this case unless Johnstone and Roosen show cause otherwise by May 17, 2019. *Marcus v. Dufour*, 796 F. Supp. 2d 386, 390 (E.D.N.Y. 2011), *aff'd sub nom. Marcus v. Haaker*, 481 F. App'x 19 (2d Cir. 2012) ("Generally, once an interpleader plaintiff has satisfied the jurisdictional requirements of an interpleader claim, the Court will discharge the plaintiff from liability and dismiss him from the case.").

In its Complaint in Interpleader, Jackson National also seeks an order "permanently restraining the parties hereto from instituting and/or prosecuting any other suit, cause of action or civil proceeding in any State, Federal or other court of competent jurisdiction against Jackson National seeking the Death Benefit or asserting claims under the Policy as a consequence of the death of the Decedent." ECF No. 1 at 6. Under 28 U.S.C. § 2361, "a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court" and may "make the injunction permanent." This statute "enables a party meeting the requirements of § 1335 to obtain a restraining order without following the procedures set forth in Federal Rule of Civil Procedure 65, which normally governs the issuance of injunctive relief." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (E.D.N.Y. 2013) (internal quotation marks, citations, and alterations omitted). "An injunction against overlapping lawsuits is desirable to insure the effectiveness of the interpleader remedy" and "prevents the multiplicity of actions and reduces the possibility of

inconsistent determinations." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992).

In this case, an injunction restraining Roosen, Johnstone, and Johnson from continuing or bringing any suits against Jackson National seeking the death benefit or with regard to payment of the death benefit appears to be warranted to protect Jackson National from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy. **Therefore, an injunction barring suits seeking the death benefit or related to payment of the death benefit will be granted unless, as noted above, Johnstone and Roosen show why it should not be by May 17, 2019.**

Jackson National made three additional demands for relief. First, it sought an order compelling Johnson, Roosen, and Johnstone to settle or litigate their respective entitlement to the death benefit. ECF No. 1 at 6. That relief is denied because, to date, Johnson has not appeared. Second, it sought a declaration of the lawful and proper beneficiaries of the death benefit. *Id*. That relief is denied for the reasons set forth below. Third, it requested attorneys' fees and costs, ECF No. 1 at 6, but later abandoned that request, ECF No. 28-1 at 5.

### B. Roosen and Johnstone

The second stage of the interpleader analysis requires the court to adjudicate the adverse claims of the defendant claimants.[6] In their Cross Complaint, Roosen and Johnstone state that

---

[6] As noted, Roosen and Johnstone did not serve their Cross Complaint on Johnson, and that complaint seeks relief different from that set forth in Jackson National's complaint – namely, that the court order payment to Roosen and Johnstone. The Court may not afford them such relief at this stage. *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."); Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Nevertheless, the Court continues its interpleader analysis and notes that, even if service had

13

they are entitled to the death benefit "as they were properly named as beneficiaries of the subject life insurance policy in a Change of Beneficiary Form submitted to, and accepted by, plaintiff, or its predecessor in interest, on or about September 5, 2008." ECF No. 16 at 2-3 ¶ 1. They further state that at the time they submitted this form to Jackson National, or its predecessor in interest, Johnson "had no legal or equitable claim to the benefits." *Id*. at 3 ¶ 2. As noted above, however, although a default constitutes an admission of the allegations in a complaint, it does not admit any conclusions of law. *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d at 420. Here, neither the allegations in the Complaint in Interpleader nor the allegations in the Cross Complaint establish that Roosen and Johnstone are entitled to the death benefit, for two reasons.

First, Johnstone and Roosen admit in their Answer and Cross Complaint that Johnson did not execute the Request for Change of Beneficiary Form dated September 5, 2008. ECF No. 16 at ¶ 14; *see also* ECF No. 1 at ¶ 14.[7] It is unclear whether Johnson was required to execute these forms before the beneficiaries were legally changed—as is required by some insurance policies. *See Genworth Life and Annuity Ins. Co. v. Ramisir*, 2017 WL 4797834, at *3 (E.D.N.Y. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL 4792231 (E.D.N.Y. Oct. 23, 2017) (citing policy language stating that "[t]he Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime," but that "[a]ny change is subject to the consent of an irrevocable beneficiary"); *Union Cent. Life Ins. Co. v. Berger*, 2012 WL 4217795, at *1 (S.D.N.Y. Sept. 20, 2012) (explaining that the "Policy's terms . . . require that consent to any change in beneficiary must be obtained from irrevocable beneficiaries"), *aff'd*, 612 Fed.

---

been properly effectuated, the Court could not grant Roosen's and Johnstone's motion for default judgment for the reasons set forth in this section.
[7] Johnstone and Roosen state that they "are without sufficient knowledge or information" as to whether Johnson executed the Request for Change of Beneficiary Form dated November 5, 2001. ECF No. 16 at ¶ 13; *see* ECF No. 1 at ¶ 13.

14

Appx. 47 (2d Cir. 2015). There are no allegations that the policy at issue in this case did not require Johnson's consent, as an irrevocable beneficiary, to change the beneficiaries, and the policy itself has not been submitted to the Court.

Second, the Divorce Judgment provides that Shinners would pay Johnson alimony "for a period of 8 years *from the date of dissolution*." ECF No. 16 at ¶ 18; ECF No. 1 at ¶ 18 (emphasis added). Absent any indication otherwise, it appears that the date of the Divorce Judgment—September 20, 2000—is also the date of dissolution. Both Request for Change of Beneficiary Forms were executed before eight years had elapsed from that date. The first was executed by Shinners on November 5, 2001—just over one year from the date of the Divorce Judgment. ECF No. 1 at ¶ 13.[8] The second was executed by Shinners on September 5, 2008—fifteen days shy of eight years from the date of the Divorce Judgment. ECF No. 16 at ¶ 14; *see also* ECF No. 1 at ¶ 14. Roosen and Johnstone do not address whether this impacts the validity of the Request for Change of Beneficiary Forms (which, as noted above, were also not executed by Johnson).

The Court is therefore unable to determine whether Roosen and Johnstone are entitled to the death benefit.

## V. Conclusion

For the reasons set forth above, Jackson National's Motion for Default Judgment, ECF No. 28, is GRANTED IN PART and DENIED IN PART. The order of default with respect to Johnstone and Roosen against Johnson, ECF No. 22, is VACATED. Roosen's and Johnstone's Motion for Default Judgment, ECF No. 30, is DENIED WITHOUT PREJDUICE. The Joint Motion for Entry of Stipulated Judgment, ECF No. 27, is DENIED WITHOUT PREJUDICE.

---

[8] The Court notes that Johnstone and Roosen do not admit this allegation as they "are without sufficient knowledge or information" to do so. ECF No. 16 at ¶ 13.

Jackson National will be discharged from any further liability in this case unless, as explained in greater detail above, Johnstone and Roosen show cause why such relief should not be granted by **May 17, 2019.** Roosen, Johnstone, and Johnson will be enjoined from instituting or prosecuting any other suit against Jackson National seeking the death benefit or with regard to payment of the death benefit unless, as noted, Johnstone and Roosen show cause why such relief should not be granted by **May 17, 2019.** Jackson National shall send a copy of this injunction order to Johnson by registered mail, return receipt requested, and shall file proof of such return receipt or other proof of service on the docket by **May 17, 2019.**

Because Roosen and Johnstone did not serve their Cross Complaint on Johnson, they shall serve this order, together with their Answer and Cross Complaint, on Johnson in accordance with Rules 4 and 5. **They shall file proof of such service on the docket.** Johnson shall have **21 days thereafter** to file an appearance. If Johnson fails to appear and defend against the Cross Complaint in this timeframe, Roosen and Johnston may file a motion for default and, if a default is entered, they may file a motion for a default judgment, together with a memorandum addressing the issues noted above and showing they are entitled to the requested relief.

Finally, the Court retains jurisdiction over this action to adjudicate the lawful and proper beneficiaries of the death benefit.

IT IS SO ORDERED.

                                                /s/ MICHAEL P. SHEA
                                                Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                May 3, 2019